IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action 14-cv-00577-MJW

ABDUL MUNER MASAD,

Plaintiff,

v.

ROBERT NANNEY, individually and in his capacity as Deputy Sheriff for Adams County, Colorado;
PHILLIP MEANEY, individually and in his capacity as Deputy Sheriff for Adams County, Colorado;
DOUGLAS DARR, individually and in his capacity as Sheriff of Adams County, Colorado; and
ADAMS COUNTY, COLORADO,

Defendants.

---

**ORDER ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 14)**

---

**MICHAEL J. WATANABE
United Stated Magistrate Judge**

According to his Complaint, Abdul Muner Masad was arrested for no good reason, with bail set at an abnormally and unreasonably high level due to fibs told by the arresting officers. The ordeal, he says, caused him embarrassment, financial losses, and medical deprivation. The charges were later dropped, and he has now sued the arresting officers and their employers (Adams County, Colorado and its sheriff) for damages. The Defendants have moved to dismiss all of Masad's claims under Rules 12(b)(1) and 12(b)(6) (Docket No. 14).

The parties have consented to have this case resolved in its entirety by a magistrate judge under 28 U.S.C. § 636(c) (Docket Nos. 15, 18). The Court will dismiss

Masad's claims. In his objection to Defendants' motion, Masad suggested that he instead be allowed to amend his complaint; the Court concludes, however, that amendments would be futile.

## **Masad's Legal Claims**

To determine whether Masad has stated any claims upon which relief can be granted, the Court must first figure out what his claims are. Masad is represented by counsel—but nonetheless, the Complaint is not as helpful on this point as it might be.

Under the heading of "First Claim for Relief," Masad alleges that he was falsely arrested by Deputy Robert Nanney (one of the Defendants). The legal theory is not otherwise explained, but this would appear to be a state-law tort claim.

Under the heading of "Second Claim for Relief," Masad alleges that he "was denied his constitutional rights to be free of unlawful arrest and free from excessive bail" and that he "was denied his rights to liberty and to be free from cruel and unusual punishment." The allegations under this heading refer to three Defendants: Deputy Nanney, Deputy Phillip Meaney, and Sheriff Douglas Darr. Masad goes on to allege, later under this same heading, that the Defendants' "conduct violates [Masad's] rights as guaranteed by Article II, Section III, VII, XX and XXV of the Colorado Constitution and the 4th, 5th, 8th, 11th and 14th Amendments to the United States Constitution."

That laundry list of legal citations would ordinarily be far too sweeping to be of any use, but Plaintiff has agreed to dismiss any claims based on the Colorado Constitution or the Eleventh Amendment (Docket No. 21, at 5, 13). The Court therefore DISMISSES those claims without further analysis. Further, to the extent Masad asserts a procedural or substantive due process claim under the Fifth or Fourteenth

3

Amendments, the Court DISMISSES those claims as duplicative. *See Shimomura v. Carlson*, ___ F. Supp. 2d ___, 2014 WL 585343, at *5 (D. Colo. 2014) ("'[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of [] due process, must be the guide for analyzing these claims.'" (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994))).

Viewing the remaining legal authorities in light of Masad's more specific allegations, the Court will construe Masad's claims as: (1) false arrest in violation of the Fourth Amendment; (2) cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments[1]; (3) and excessive bail in violation of the Eighth Amendment.

Under the heading of "Third Claim for Relief," Masad alleges negligent hiring by Sheriff Darr and by Adams County, arguing that those Defendants' hiring practices led to unlawful conduct by Deputies Nanney and Meaney. As with the first claim for relief, this is a state-law tort claim. However, the State of Colorado has not waived its sovereign immunity as to such claims. *Kahland v. Villareal*, 155 P.3d 491 (Colo. App. 2006) (holding that negligent hiring is not among the torts that can be brought against a public entity or public employee under the Colorado Governmental Immunity Act); *Riley v. Rollison*, 2007 WL 324579, at *4 (D. Colo. Jan. 31, 2007) (same). The Court therefore DISMISSES these claims without further analysis.

---

[1] In his objection to Defendants' motion to dismiss, Masad says that "C.R.S. § 16-3-401(2) places an affirmative duty on the Sheriff to provide medical care to an inmate If needed." Masad asserted no state-law cause of action relating to his medical care in his Complaint, and the Court will not consider one in this Order.

4

Under the heading of "Fourth Claim for Relief," Masad apparently alleges a municipal-liability claim under 42 U.S.C. § 1983 against Adams County and against Sheriff Darr in his official capacity.

Finally, under the heading "Fifth Claim for Relief," Masad alleges that Deputies Nanney and Meaney used Masad's national origin, race, and religion against him at the bail hearing. No other allegations are made, and no attempt is made to connect this statement to some variety of equal protection or disparate treatment claim. The allegations here would appear to relate only to the excessive-bail claim, and the Court will discuss them in that context.[2]

## **Analysis**

Under Rule 12(b)(6), the Court must accept the facts Masad alleged in the Complaint as true; further, if there are inferences that must be drawn, the Court must draw them in Masad's favor. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). Only factual allegations are to be accepted as true; allegations of legal conclusions—for example, that conduct was "unreasonable," "negligent," "willful and wanton," and the like—are not included in the Court's analysis. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Generally speaking, only the Complaint is to be considered; facts and documents that the parties have brought forward while briefing the motion to dismiss usually have no bearing on the motion. *See Archuleta v. Wagner*,

---

[2] In Masad's objection to the motion to dismiss, as to this fifth claim for relief, he argues that Defendants violated his substantive due process right to be free of government conduct that shocks the conscience (Docket No. 21, at 11–12). There is no credible way to read any of the language in the Complaint as raising such a claim, and the Court will not construe the Complaint as doing so. Moreover, such a claim would be dismissed as duplicative anyway. *See Shimomura*, 2014 WL 585343, at *5.

5

523 F.3d 1278, 1281 (10th Cir. 2008). That said, there are a few ways in which such additional facts and documents can become relevant, and two of those ways come to mind here.

First, additional facts provided by Masad in opposing the motion are not relevant to whether he has stated a claim—but they are relevant to whether there's some chance he could save his claims in an amended pleading. See, e.g., Grossman v. Novell, Inc., 120 F.3d 1112, 1126 (10th Cir. 1997). Second, the Court may take judicial notice (if otherwise appropriate under Federal Rule of Evidence 201) of the existence and contents of certain public records, although the Court may not rely on truth or falsity of those records. See, e.g., ASARCO LLC v. Union Pac. R. Co., 755 F.3d 1183, 1188 n.5 (10th Cir. 2014); Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). The Court will take notice under Rule 201 of the affidavit and application for arrest warrant and the application for increased bail (Docket Nos. 14-1 and 14-2) from Masad's arrest.

Once the set of operative facts is established according to the foregoing rules, the Court must decide whether those facts adequately state grounds for relief. It is not necessary for Masad to allege a prima facie case including every last element of his legal claims—but he must put forward enough facts for the Court to infer that his claims are at least plausible. Khalik v. United Air Lines, 761 F.3d 1188, 1191–92 (10th Cir. 2012).

**I.     State-Law Tort Claims**

Masad alleges that Deputy Nanney falsely arrested him. Under Colorado law, there can be no tortious false arrest or false imprisonment by a police officer if the arrest was supported by probable cause. Rose v. City & County of Denver, 990 P.2d 1120,

1123 (Colo. App. 1999); *Enright v. Groves*, 560 P.2d 851, 853 (Colo. App. 1977); *see also Pomeranz v. Class*, 257 P. 1086, 1092 (Colo. 1927) (sheriff not liable for false arrest where process was regular on its face). This rule of Colorado law has been repeatedly recognized by the Tenth Circuit and the District of Colorado. *See, e.g.*, *Hinton v. Franck*, 2000 WL 1846195, at *3 (10th Cir. Dec. 18, 2000); *Trimble v. Park County Bd. of Comm'rs*, 2000 WL 1773239, at *3 (10th Cir. Dec. 4, 2000); *Grobecker v. Grundy*, 2014 WL 3593513, at * 5 (D. Colo. July 18, 2014); *Mott v. Officer John Does*, 2008 WL 648993, at *6 (D. Colo. Mar. 4, 2008). Further, public employees are immune from tort liability under the Colorado Governmental Immunities Act, unless their conduct was willful or wanton. C.R.S. Sec. 24-10-118(c). In the context of a false arrest claim, the Colorado Supreme Court has applied the definition of "willful or wanton" from other areas of tort law: "wholly disregardful of the rights, feelings and safety of others . . . at times even imply[ing] an element of evil." *Moody v. Ungerer*, 885 P.2d 200, 204–05 (Colo. 1994). Thus, on top of the elements of the intentional tort itself, Masad must allege facts showing both that his arrest lacked probable cause and, also, that Defnedants wholly disregarded his rights in making the arrest.

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause exists 'where facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed.'" *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003) (quoting *Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985)).

7

"Determinations of probable cause are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime.'" *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (internal quotation marks and citation omitted).

Here, Masad was charged with sexual assault on a child by a person in a position of trust (a class 3 felony), sexual assault on a child (a class 4 felony), and child abuse (a class 2 misdemeanor). The affidavit and application for arrest warrant (Docket No. 14-1) recounts (1) the contents of an iPhone video shown to a deputy sheriff and (2) the statements of two eyewitnesses, Leonid Kruglik and Danielle Delgado. The video, which Masad does not contend is somehow fabricated or misleading, shows Masad engaging in conduct that establishes most of the elements of the crimes charged. The statements of Kruglik and Delgado establish the remaining elements of the crimes charged and several further instances of violations. The video and the witness statements, taken together, establish probable cause as to the crimes charged.

Critically, Masad makes no allegations whatsoever regarding probable cause for his arrest. His Complaint includes allegations that Deputies Nanney and Meaney made false statements to the district attorney's office, and that those false statements were used to impose excessive bail (Complaint ¶¶ 13–17). He does not allege that those false statements were used to obtain the arrest warrant. Nor could he: the affidavit and application for arrest warrant does not include the statements alleged to be false. In fact, at no point in Masad's Complaint does he even allege that he was innocent of the

8

charges brought against him—let alone that Defendants lacked probable cause to believe otherwise.

As to the willfulness and wantonness of the arrest, the Complaint is literally silent. There are no facts alleged from which any inferences might be drawn, or even speculations guessed at, bearing on the deputies' motives, the facts known to them, the diligence of their investigation, or the like. Indeed, outside of arresting Masad and seizing his medication upon booking, the only actual acts or omissions alleged to have been made by either deputy are their statements to the district attorney's office in regard to the bail-setting hearing. These are post-arrest acts with no relevance to a false-arrest claim.

Masad gives the Court no reason to believe that amending the Complaint would cure it of its deficiencies. In his objection to Defendants' motion to dismiss, Masad brings forth additional factual allegations: specifically, that Kruglik was an employee of Masad's facing "immediate discharge from his employment," and that Delgado "was homeless and entirely dependent on [Kuglik] for her daily support" and "was in the process of having her parental rights restricted at the time of the report." These new allegations, obviously, go to the credibility of the two witness statements recounted in the arrest-warrant affidavit.

If Masad were to amend his pleadings to include these statements, he would state a claim for relief only if the allegations (assumed to be true) would have vitiated probable cause had they been included in the affidavit and application for arrest warrant. *See, e.g.*, *Stewart v. Donges*, 915 F.2d 572, 582 (10th Cir. 1990). If, on the other hand, the issuing judge "would not have altered his probable cause determination

even if he had been presented with the omitted material, then the warrant should be upheld." *United States v. Kennedy*, 131 F.3d 1371, 1377 (10th Cir. 1997). Here, the iPhone video provided sufficient corroboration of the witness statements, even if the witnesses were otherwise non-credible, to support probable cause. *Cf. Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2001) (when probable cause has been gained from a reasonably credible victim or eyewitness, there is no constitutional duty to investigate further); *Simkunas v. Tardi*, 930 F.2d 1287, 1292 (7th Cir. 1991) ("Having uncovered sufficient evidence to establish probable cause," officers had "no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence."). As a result, even if the affidavit had included the information undermining the credibility of the two witnesses, it would still have shown probable cause and the arrest would still have been lawful.

Further, although Masad states in his objection to the motion to dismiss that further facts can be alleged to show willful and wanton behavior, he does not inform the Court what those additional facts might be. Accordingly, the Court holds that amending the Complaint would be futile; the state-law tort claims for unlawful arrest are DISMISSED as to all Defendants, without leave to amend.

**II.     Fourth Amendment Claims**

Masad also alleges false arrest under the Fourth Amendment against all Defendants. This claim fails for the same reason the intentional-tort claims fail: there was probable cause for the arrest. *See, e.g.*, *Grubbs v. Bailes*, 445 F.3d 1275, 1278–79 (10th Cir. 2006). The Fourth Amendment claims for false arrest are DISMISSED as to all Defendants, without leave to amend.

10

### III.  Eighth & Fourteenth Amendment Claims

Masad also alleges that he was subjected to cruel and unusual punishment, insofar as he suffered medical deprivations while in custody.  "Under the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment."  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (ellipses and quotation omitted).  "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment."  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

Deliberate indifference "involves both an objective and a subjective component."  *Id.* (quotation omitted).  For the objective component, a prisoner must provide "evidence that the deprivation at issue was in fact sufficiently serious."  *Id.* (quotation omitted).  A medical need is considered sufficiently serious to satisfy the objective prong if the condition "has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotation marks and ellipses omitted).  The subjective component requires "evidence of the prison official's culpable state of mind," which may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference."  *Mata*, 427 F.3d at 751 (brackets and quotation omitted).  This "standard lies somewhere between the poles of

11

negligence at one end and purpose or knowledge at the other." *Id.* 752 (quotation omitted).

> For purposes of this claim, Masad alleges:
>
> Plaintiff suffers from a serious back ailment and was and is on a strong regimen of medications to treat the symptoms of his ailment. Plaintiff was provided medical care while at the detention facility but the care did not obviate the symptoms to the extent provided by his regular medications. Plaintiff suffered pain while in custody in the detention facility and for an extended period after his release.

(Complaint ¶ 11.) This fails to state a claim for deliberate indifference. To begin with, Masad's allegation that he suffered more pain than he otherwise would have fails to establish the objective component of Masad's claim—that his condition was sufficiently serious to be either diagnosed by a doctor or obvious even to a lay person. And further, Masad makes no allegations at all as to what the relevant prison officials knew about his medical needs—except that they provided some medical care, which would suggest the opposite of deliberate indifference. Masad has not stated a claim for deliberate indifference.

In his objection to Defendants' motion to dismiss, Masad alleges no new facts that might support his theory. The only statement on point is Masad's argument that the presence of prescription medications is sufficient to suggest to the jail doctors that Masad has been diagnosed by a doctor with a condition warranting treatment (Docket No. 21, at 9). However, Masad also states that he "was unable to demonstrate to the medical care provider that he had a legitimate prescription for the medications" (Docket No. 21, at 4), from which the only reasonable inference is that someone at the jail asked. These new facts do not strengthen Masad's deliberate-indifference claim.

12

Based on the arguments and facts as stated in Masad's objection to the motion to dismiss, the Court concludes that leave to amend the Complaint would be futile. The deliberate-indifference claims are DISMISSED as to all Defendants, without leave to amend.

**IV.   Eighth Amendment Claims**

Finally, Masad alleges that Defendants violated his Eight Amendment right to be free from excessive bail. The Tenth Circuit has held that the Excessive Bail Clause is incorporated against the states under the Fourteenth Amendment. *Meechaicum v. Fountain*, 696 F.3d 790, 791 (10th Cir. 1983). The court held that "[b]ail is excessive when set at an amount higher than necessary to insure the appearance of the accused at trial." *Id*. But in *Meechaicum*, unlike here, the defendant was denied bail altogether; the Tenth Circuit has provided further analysis for such situations, *see, e.g.*, *Dodds v. Richardson*, 614 F.3d 1185 (10th Cir. 2010), but has not adopted any further analysis as to claims for excessive bail, rather than denial of bail.

The leading case from other circuits appears to be *Galen v. County of Los Angeles*, 477 F.3d 652 (9th Cir. 2007). There, the Ninth Circuit examined the limited Supreme Court precedent on point, and concluded:

> To determine whether the Excessive Bail Clause has been violated, we look to the valid state interests bail is intended to serve for a particular individual and judge whether bail conditions are excessive for the purpose of achieving those interests. The state may not set bail to achieve invalid interests, *see Stack [v. Boyle*, 342 U.S. 1, 5 (1951)]; *Wagenmann v. Adams*, 829 F.2d 196, 213 (1st Cir.1987) (affirming a finding of excessive bail where the facts established the state had no legitimate interest in setting bail at a level designed to prevent an arrestee from posting bail), nor in an amount that is excessive in relation to the valid interests it seeks to achieve, *see [United States. v.] Salerno*, 481 U.S. [739, 754 (1987)].

*Galen*, 477 F.3d at 660. The court went on to conclude that a claim must satisfy one of two alternative tests: "[t]o prevail on his claim that his bail enhancement violated the Excessive Bail Clause, Galen must show that the Commissioner enhanced his bail for purposes unauthorized by California law or that the amount of bail was excessive in light of the valid purposes for which it was set." *Id.* The *Galen* court reviewed a grant of summary judgment for the defendants; it affirmed because the plaintiff had not adduced any evidence as to the motives of the defendants—and that evidentiary gap prevented any genuine dispute of fact under either of the alternative tests. *Id.* at 661–63. Finally, the *Galen* court added one further hurdle. Because tort principles apply to § 1983 claims, and because judicial officers have long been held to be superseding causes that break the chain of proximate causation, an excessive-bail claim can only succeed where the defendants "deliberately or recklessly misled the [judicial officer who set bail]" and "bail would not have been unconstitutionally excessive *but for* the officers' misrepresentations." *Id.* at 664 (emphasis added). Importantly, the *Galen* court's tests for excessive bail—improper purpose or excessiveness in light of a valid purpose—are disjunctive, but the predicate but-for causation rule bars relief under either test. *See id.*

On motions to dismiss, courts have consistently followed the *Galen* court's lead, requiring complaints to allege facts showing (1) that one of the two tests is satisfied, and also (2) that the defendants' improper conduct proximately interfered with the state court's independent judgment in setting bail. *See, e.g.*, *Olajide v. Arsanis*, 2014 WL 985102, at *7 (N.D. Cal. Mar. 7, 2014) (dismissing claim because defendant failed to allege improper purpose, an amount that would be excessive, or that defendants "deliberately or recklessly" misled the state court); *Harvey v. City of South Lake Tahoe*,

14

2013 WL 655164, at *13–14 (E.D. Cal. Feb. 21, 2013) (dismissing claim because $80,000 bail could not have been excessive in light of bail schedule calling for $75,000); *Daoud v. Manchester Police Dep't*, 2011 WL 5837126, at *3–4 (D. N.H. Oct. 25, 2011) (dismissing claim that failed to provide allegations as to any of the various state-law factors bearing on flight risk); *Muhammad v. San Diego County Sheriff's Dep't*, 2008 WL 821832, at *2 (S.D. Cal. Mar. 26, 2008) (dismissing claim with no allegations from which the court could judge whether the defendants had interfered with the state court's independent judgment in setting bail).

Masad's Complaint passes the first part of the *Galen* test. Masad alleges that the bond schedule for the crimes he was charged with called for bail to be set at $50,000, while the district attorney asked for and received a cash-only bond of $250,000. Masad alleges that Deputies Nanney and Meaney provided false information to the district attorney's office, leading to an increase in bail (Complaint ¶¶ 13–17). Drawing inferences in Masad's favor, the Court will assume that the deputies' false statements to the district attorney's office were deliberate. Masad further alleges that Defendants used his national origin, race, and religious affiliation as part of the case for higher bail (Complaint ¶ 47). Taken to be true, these facts and inferences could plausibly state a claim for relief based on the improper-purpose prong of the *Galen* test (although, if this claim were going forward, an amended complaint putting these allegations together under one claim of relief would be in order).

Nonetheless, Masad has not alleged any facts from which it can be inferred that the conduct of Deputies Nanney and Meaney were the but-for cause of the excessive bail. Taking judicial notice of the county's application for $250,000 cash-only bail

Case 1:14-cv-00577-MJW   Document 23   Filed 08/27/14   USDC Colorado   Page 15 of 16

15

(Docket No. 14-2), the false statements constitute a negligible portion of the argument presented to the state court. And the remaining statements in the application are far more salient: Masad possessed one-way airline tickets for travel out of the country; the whereabouts of his alleged underage victim were unknown; Masad had a substantial criminal history. The allegations in the Complaint do not suggest any plausible chance that Masad will ultimately be able to prove but-for causation.

In his objection to Defendants' motion, Masad fails to address any of those three salient flight-risk factors (except to allege minor corrections to his stated criminal history). Even if all of the additional facts contained in that objection were included in the application for increased bail, the allegedly false statements would still not rise to the level of but-for causation. Accordingly, it would be futile to amend the Complaint; the excessive-bail claims are DISMISSED as to all Defendants, without leave to amend.

**V.      42 U.S.C. § 1983 Claims**

"Section 1983 itself does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere." *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1536 (10th Cir. 1995) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Neither Adams County nor its Sheriff in his official capacity can be liable under § 1983 if none of their employees violated Masad's federal rights. *Martinez v. Beggs*, 563 F.3d 1082, 1091–92 (10th Cir. 2009). Because the Court has dismissed all of Masad's constitutional claims against Deputies Nanney and Meaney, the § 1983 municipal liability claims against Sheriff Darr and Adams County are also DISMISSED.

16

## **Conclusion**

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss (Docket No. 14) is GRANTED and that Masad's claims are DISMISSED under Rule 12(b).

Dated: August 27, 2014                     */s/ Michael J. Watanabe*
       Denver, Colorado                     Michael J. Watanabe
                                       United States Magistrate Judge